FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 2 5 2008 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
_____
                                        )
                                        )      MEMORANDUM AND
D.S., by and through his mother and next friend )  ORDER ON CLASS
S.S.; D.W.1; D.W.2, by and through his  )      CERTIFICATION AND
mother and next friend N.W.; R.H., by and )    APPROVAL OF
through his mother and next friend H.G.; )      PROPOSED SETTLEMENT
N.L., by and through her mother and next )
friend S.L.; and L.H., on behalf of themselves )
and all others similarly situated       )
                                        )
                  Plaintiffs,           )
                                        )
              – against –               )      05-CV-4787
                                        )
NEW YORK CITY DEPARTMENT OF             )
EDUCATION and NEW YORK CITY             )
BOARD OF EDUCATION,                     )
                                        )
                  Defendants.           )
                                        )
_____    )
```

JACK B. WEINSTEIN, Senior United States District Judge:

## Contents

I.   Introduction ........................................................................................... 3

   A.   Preventing Educational Discrimination ............................................ 3

   B.   Class Action to Protect and Enforce Rights ..................................... 6

II.  Facts ...................................................................................................... 9

   A.   Plaintiffs' Claims of Denial of Educational Services at B&G ......................... 9

   B.   Procedure .......................................................................................... 10

   C.   Proposed Definitions of Class and Compensatory Subclass .......................... 12

   D.   Proposed Settlement Agreement ......................................................... 12

      1.   Injunctive relief ............................................................................ 13

      2.   Monitoring ..................................................................................... 14

      3.   Compensatory Relief ..................................................................... 16

1

III.    Class Certification under Rule 23 ................................................................. 16

A.    Public Interest in Education-Related Class Certifications ............................................ 16

B.    Proposed Class and Subclass Satisfy Rule 23(a) Requirements ..................................... 17

    1.    Class and Subclass Are So Numerous that Joinder Is Impracticable......................... 18

    2.    Questions of Law and Fact Are Common to Class and Subclass ............................... 19

    3.    Claims of the Representative Parties Are Typical of Claims of Class and Subclass.. 19

    4.    Representative Parties Fairly and Adequately Protect the Interests of Class and Subclass Members ................................................................................................ 20

C.    Proposed Class and Subclass Are Appropriate ............................................................ 22

    1.    Class .................................................................................................................. 22

    2.    Compensatory Education Subclass ....................................................................... 23

        a.    Questions of Law or Fact Common to Class Members Predominate over Questions Affecting Only Individual Members ........................................... 23

        b.    Class Action Is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy ................................................... 24

D.    Class Counsel ........................................................................................................... 25

IV.    Approval of Proposed Settlement Agreement ................................................. 27

A.    Procedural Fairness ................................................................................................... 27

B.    Substantive Fairness, Reasonableness, and Adequacy ................................................ 28

    1.    Complexity, Expense, and Likely Duration of Litigation ......................................... 29

    2.    Reaction of the Class and Subclass ...................................................................... 29

    3.    Stage of the Proceedings and the Amount of Discovery Completed ......................... 32

    4.    Risks of Establishing Liability .............................................................................. 32

    5.    Risks of Establishing Damages or Right to Other Relief .......................................... 32

    6.    Risks of Maintaining the Class Action through Trial ................................................ 33

    7.    Ability of the Defendants to Withstand a More Onerous Judgment .......................... 34

    8.    Range of Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Risks of Litigation .......................................................................... 34

C.    Notice to Class and Compensatory Education Subclass Members ................................ 35

D.    Final Order to Certify the Class and Subclass and to Approve Settlement .................... 37

V.    Conclusion ................................................................................................... 38

    Appendix – Settlement Notice ....................................................................... 40

I.    Introduction

Minority students and their parents at Boys & Girls High School ("B&G") bring this class action contending that they and many others were deliberately denied a high school education. Defendants are the New York City Department of Education ("DOE") and the New York City Board of Education ("BOE"). There is merit to the suit. The parties have reached a reasonable and viable settlement. This memorandum describes the reasons for class certification and approval of the settlement.

A.  Preventing Educational Discrimination

"This Nation has a moral and ethical obligation to fulfill its historic commitment to creating an integrated society that ensures equal opportunity for all of its children." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738, 2797 (2007) (Kennedy, J., concurring). The Supreme Court has recognized that equal opportunity in education forms the foundation of this obligation:

> [E]ducation is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms.

*Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). *See also* N.Y. Const. art. XI, § 1 ("The legislature shall provide for the maintenance and support of a system of free common schools,

wherein all the children of this state may be educated."); Campaign *for Fiscal Equity, Inc. v. New York*, 801 N.E.2d 326, 330 (N.Y. 2003) (holding that New York's Constitution requires that all students be provided a "sound basic education," which "conveys … skills fashioned to meet a practical goal: meaningful civic participation in contemporary society") (internal quotations and citations omitted).

This action is not based on *de jure* discrimination against African-Americans and Latinos. It involves *de facto* constitutional violations. B&G's enrollment is overwhelmingly African-American and Latino. *See* Part II.A, *infra*. Administrative and other procedures sought to be rectified have had a real-life disproportionate adverse impact on students of those racial and ethnic groups. *Brown* was designed not as an abstract legal formulation, but to protect students who face debilitating discrimination in their education. Defendants had to be aware of what all could literally see – that their practices and policies of exclusion primarily adversely affected African-Americans and Latinos. A judicial remedy is mandated by Supreme Court cases from *Brown* to *Seattle*.

"*Brown* considered the complexities arising from the transition to a system of public education freed of racial discrimination." *Bd. of Educ. of Oklahoma City v. Dowell*, 498 U.S. 237, 248 (1991) (emphasis added). That continuing transition requires an ongoing commitment to equal opportunity for students of all racial, ethnic, and socioeconomic backgrounds. Courts remain involved in the legal and societal commitment – when jurisdiction is imposed on them, as it is here – to ensure equality of opportunity at all levels of education.

Article III judges have an essential continuing role in protecting each individual student's right to a meaningful opportunity for education, a right that, in practical terms, overlaps

4

significantly with the constitutional values of equality and non-segregation. As one authority

noted:

> Meaningful educational opportunity for all children ... can be achieved – but not without the continued and expanded involvement of the courts in educational reform cases. Contemporary understandings of equal educational opportunity were largely created by *Brown v. Board of Education* and shaped by the series of federal desegregation and related education cases that followed in its wake.

Michael A. Rebell, *Poverty, "Meaningful" Educational Opportunity, and the Necessary Role of the Courts*, 85 N.C.L. Rev. 1467, 1526 (2007). Emphasized was the role of the courts:

> Judicial remedial involvement in school district affairs [can be] both less intrusive and more competent than is generally assumed, largely because school districts and a variety of experts generally participated in the formulation of reform decrees, with the courts serving as catalysts and mediators.

*Id.* at 1532. *See also Anderson v. Sch. Bd. of Madison Cty.*, 517 F.3d 292, 305-06 (5th Cir. 2008) (Stewart, J., concurring) ("[T]he cruel irony is that racial isolation, albeit not as the product of *de jure* segregation, largely remains as foreboding and potentially deleterious as it was when federal court supervision began ... [D]espite the societal progress that has been made in dismantling systems of segregation, many of the concerns highlighted in *Brown* still remain as viable today as when that opinion was first authored."); *Grutter v. Bollinger*, 539 U.S. 306, 325 (2003) (approving plan for student diversity as a "compelling state interest"); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 313 (1978) (adopting the "view that the contribution of diversity [in education] is substantial"); *Hart. v. Comm. Sch. Bd. Of Brooklyn*, 536 F. Supp. 2d 274, 283 (E.D.N.Y. 2008) (finding that the "same considerations ... [relied upon in] *Grutter* and *Bakke* should be applied to grade schools where characteristics for future success or failure are

imprinted on students"); *The Resegregation of Seattle's Schools (Special Report)*, Seattle Times, June 1, 2008, at A1 (investigating continued and worsening segregation and inequality in Seattle's public school system).

As the Supreme Court declared in *Brown*:

> [I]n finding that a segregated law school for Negroes could not provide them equal educational opportunities, this Court relied in large part on those qualities which are incapable of objective measurement but which make for greatness in a law school. In *McLaurin v. Oklahoma State Regents*, (339 U.S. 637), the Court, in requiring that a Negro admitted to a white graduate school be treated like all other students, again resorted to intangible considerations: his ability to study, to engage in discussions and exchange views with other students, and, in general, to learn his profession. Such considerations apply with added force to children in grade and high schools.

*Brown*, 347 U.S. at 494-95 (emphasis added; parenthesis and footnote omitted).

The courts' role in the elimination of educational inequality provides an open forum for individuals, community groups, and government actors to expose, and to assist in correcting, discriminatory systems and practices prohibited by law and constitutional principles:

> Particularly when the courts have become involved and members of the legal community have been able to work together with members of the education community to effect change pursuant to common goals, barriers to equal access have been significantly lowered and the right to equal educational opportunity has been maximized for all students.

Stuart Biegel, *Court-Mandated Education Reform: The San Francisco Experience and the Shaping of Educational Policy after Seattle-Louisville and Ho v. S.F.U.S.D.*, 4 Stan. J. Civ. Rts. & Civ. Liberties 159, 161 (2008).

B.  Class Action to Protect and Enforce Rights

The class action is well suited to protect educational rights. Federal Rule 23(b)(2) was

"designed to assist litigants seeking institutional change in the form of injunctive relief."

*Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001). *See also Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 692 (S.D.N.Y. 1996) ("An order requiring defendants to comply with federal and state law in order to remedy the systemic failures that are the source of plaintiffs' claims constitutes relief that would serve the entire putative class."). Representation through Rule 23(b)(2) provides an efficient tool to provide relief "for a numerous and often unascertainable or amorphous class of persons." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994). Past, present, and future minority high school students at B&G, deprived of the opportunity of a high school education by policy and practice, constitute a class that may appropriately seek institutional change to prevent and remedy serious constitutional violations.

Procedural devices permitting disadvantaged persons and groups of persons to seek equalization of status and rights are favored by the courts. *See, e.g.*, Einer Elhauge, *Statutory Default Rules* 168-87 (2008) (canons of statutory interpretations favoring the politically powerless); Michael Perry, *The Constitution, the Courts, and Human Rights* 148 (Yale Univ. Press 1982) (endorsing judicial protection of society's most vulnerable persons and groups); Monograph, *Individual Justice in Mass Tort Litigation* 92 (1995) ("[Judges] cannot and should not remain neutral and passive in the face of problems implicating the public interest."); Lecture, *The Role of Judges in a Government Of, By, and For the People: Notes for the Fifty-Eighth Cardozo Lecture,* 30 Cardozo L. Rev. 1, 33-38 (2008) (supporting judicial interpretation of the Constitution to help the disadvantaged). *Cf. United States v. Handy*, 570 F. Supp. 2d 437, 453 (E.D.N.Y. 2008) (indicating appropriate use of rule of lenity in criminal cases); *United States v. Polizzi*, 549 F. Supp. 2d 308, 377-78 (E.D.N.Y. 2008) (discussing use of the rule of lenity in

protecting the rights of vulnerable individuals).

There has been no erosion of the class action as an appropriate means of vindicating constitutional rights. The law continues to recognize the Section 23(b)(2) class action as effective in such matters. *See, e.g.*, Jack Greenberg, *Civil Rights Class Actions: Procedural Means of Obtaining Substance*, 39 Ariz. L. Rev. 575, 577 (1997) (emphasizing that the "partnership between class actions and civil rights has grown to such an extent that the Advisory Committee revising Rule 23 noted that, 'subdivision (b)(2) has cemented the role of class actions in enforcing a wide array of civil rights claims'"). *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) class actions). Robustness in class action practice is particularly necessary in cases like the present one in which a large group of African-American and Latino students have been deprived of an adequate education. *See, e.g., Nat'l Law Center on Homelessness and Poverty v. New York*, 224 F.R.D. 314 (E.D.N.Y. 2004) (granting certification for class of homeless children and their parents for violations of equal protection and the McKinney-Vento Act that denied them school enrollment and required educational services); *Blackman v. District of Columbia*, 454 F. Supp.2d 1 (D.D.C. 2006) (approving consent decree under the Individuals with Disabilities Education Act and Section 1983 for class of students denied a free and appropriate public education); *Antoine v. Winner School Dist.*, No. 06-3007, 2006 WL 3007375 (D.S.D. Oct. 20, 2006) (certifying class of Native American students facing racially discriminatory practices at school).

Federal Rule of Civil Procedure 23(b)(2) reads as follows:

> A class action may be maintained if ... the party opposing the class
> has acted or refused to act on grounds that apply generally to the

> class, so that final injunctive relief or corresponding declaratory
> relief is appropriate respecting the class as a whole.

The facts of the present case fit this description like a surgeon's latex gloves.

II.    Facts

A.    Plaintiffs' Claims of Denial of Educational Services at B&G

B&G is a comprehensive public high school in the heavily minority Bedford-Stuyvesant neighborhood of Brooklyn, New York. As of the 2007-08 school year, 89.4% of the student population was African-American, 8.3% was Latino, 1.0% was American Indian/Alaska Native, 0.7% was Asian, and 0.6% was White. B&G Demographics and Accountability Snapshot, *available at* http://schools.nyc.gov/documents/oaosi/cepdata/2007-08/cepdata_K455.pdf. During the 2007-08 school year, almost 62% of students were at or below the poverty level. *Id.* Recent data indicates that 77% of ninth and tenth grade students at B&G come from households with income levels low enough to qualify for the free lunch program. First Amended Compl. ¶ 55.

Class and subclass members include general education students and students with disabilities who require special education services. Plaintiffs allege that approximately 500 B&G students during a school year have been placed on modified schedules in which they did not receive daily instruction adequate to earn a high school diploma. *Id.* at ¶ 39. An equivalent number of students were marked as "long-term absent." *Id.* Many students have been denied classroom assignments, school enrollment, and daily admission to school buildings. *Id.* at ¶¶ 44-50. At an administrative special education hearing, a former B&G principal testified to the school's history of excluding students, including a policy of denying registered students access to the school. *Id.* at ¶ 43. School officials' reasons for wrongful exclusion have included lack of high school credits and poor school performance. *Id.*

9

A detailed survey was sent to putative class members in 2007. *See* D'Amore Decl. ¶¶ 15, 17; Morehead Decl. ¶¶ 27-30. The data provided information about the nature of the violations and the kinds of remedial educational services those students whose educational rights had been violated thought would be useful to them. *See id*; Part II.D, *infra*.

Of the hundreds of B&G students who completed the survey, 122 indicated that they had been excluded from educational services. *Id.* Denial occurred because of: (1) school programming with insufficient instruction to lead towards graduation; (2) exclusion of students from B&G; (3) "partial day exclusion" of students; and (4) placement of students in the Attendance Academic Intervention Program ("AAIP") – also known as the "auditorium program" – where they spent their entire school day in the school's auditorium, receiving no academic instruction or opportunity to earn high school credits. *See* First Amended Compl. ¶¶ 59-131. Allegations of misconduct in disciplinary practices to discourage student attendance included the seizing of students' winter coats and identification cards necessary for students to enter the building. *See id.* at ¶¶ 51-53.

The complaint asserts that defendants have – by denying class members access to necessary educational resources and services – violated the Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1983; the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400-15; the Americans with Disabilities Act, 42 U.S.C. §§ 12101-34; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the New York State Constitution, N.Y. Const. art. XI, § 1; and state education law and regulations. *Id.* at ¶¶ 133-35.

B. Procedure

The original complaint was filed in October 2005. An amended complaint followed in

December of that year. Defendants included BOE, DOE, Joel Klein (in his official capacity as Chancellor of the New York City School District), Marcia Lyles (in her official capacity as Region Eight School Superintendant), and Spencer Holder (in his official capacity as B&G Principal). The parties have stipulated to the dismissal of Klein, Lyles, and Holder as defendants. *See* Stip. of Dismissal, Docket Entry ("D.E.") No. 89, Aug. 27, 2008.

Joshua Hill was appointed as Special Master, to assist the parties in reaching an agreement on preliminary requests for interim relief. *See* Order Referring Case to Special Master, D.E. No. 7, Nov. 16, 2005. Magistrate Judge Pollak presided over multiple settlement conferences in an effort to facilitate final resolution of the action.

On September 9, 2008, a hearing was conducted on the plaintiffs' motion to certify a class and a compensatory education subclass. Decision on the motion for class and subclass certification was reserved. The court issued an order approving the proposed notice. *See* Order for Notice and Hearing in Connection with Settlement Proceedings, D.E. No. 99, Sept. 12, 2008 ("Order for Notice"); Notice of Proposed Class Certification and Settlement of Class Action and Settlement Fairness Hr'g ("Settlement Notice"); Appendix. Distribution and publication of notice to members of the proposed class and subclass was completed. *See* Part IV.C, *infra*.

The court heard the parties on the issues of final class certification, determination of the proposed settlement's fairness, reasonableness, and adequacy, and approval of the settlement on November 14, 2008. It issued a tentative order certifying the class under Federal Rule of Civil Procedure 23(b)(2) and the subclass under Rule 23(b)(3). *D.S. v. New York City Dep't of Educ.*, No. 05-CV-4787, 2008 WL 4911874, at *1 (E.D.N.Y. Nov. 14, 2008). The compensatory education programs contained in the proposed settlement agreement were found to be "well

designed to ameliorate the problems alleged in the complaint." *Id.* The parties were directed to take immediate steps necessary to implement the settlement's provisions, since planning for the Spring 2009 term had to begin at once. *Id.*

## C. Proposed Definitions of Class and Compensatory Subclass

The parties have proposed that the class be defined to include those denied educational rights at B&G prior to June 30, 2008, as follows:

> All persons who have not earned a High School Diploma on or before June 30, 2008 and who, at any time during the Class Period [of October 11, 2002 to the conclusion of the fall semester of the 2010-11 school year] and while on the school register at B&G, have been, will be, or are at risk of being (1) denied a program with at least five and one-half hours of instruction designed to lead toward Graduation, unless fewer hours of instruction are necessary for Graduation, (2) wrongfully turned away from B&G, (3) subjected to Partial Day Exclusion, and/or (4) placed in the [AAIP], also known as the "auditorium program."

The subclass includes those B&G students most clearly harmed by the wrongful practices and policies who should receive compensatory education assistance, defined as follows:

> All persons who have not earned a High School Diploma on or before June 30, 2008 and who, at any time during the Compensatory Education Subclass Period [of October 11, 2002 to June 30, 2008] and while on the school register at B&G, were (1) denied a program with at least five and one-half hours of instruction designed to lead toward Graduation, unless fewer hours of instruction are necessary for Graduation, (2) wrongfully turned away from B&G, (3) subjected to Partial Day Exclusion, and/or (4) placed in the AAIP, also known as the "auditorium program."

Stip. of Settlement, ¶¶ 5-6.

## D. Proposed Settlement Agreement

A class action settlement must be reviewed and approved by the court in order to ensure that class and subclass members' rights are protected and that the settlement is fair, reasonable,

12

and adequate to all parties and others who may be affected. Federal Rule 23(e) provides:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

The proposed settlement provides class members with a remedy through (1) injunctive relief, (2) monitoring by class counsel and by an outside monitor, and (3) compensatory relief, which is scheduled to last through the fall semester of the 2010-11 school year ("Agreement Period").

### 1. Injunctive relief

Class members are to receive injunctive relief under the proposed settlement agreement, in principal part, as follows:

- Defendants must inform students at B&G of their rights to (1) attend school full-time until they graduate or until the end of the

13

school year in which they turn 21, whichever comes first, and (2) have a program with at least five and one-half hours of instruction designed to lead towards graduation, unless fewer hours of instruction are necessary for graduation.

- Defendants must not exclude a current B&G student from school or class at B&G unless the student is afforded the procedural protections set forth in New York Education Law § 3214 and DOE Chancellor's Regulations A-443 or A-450 and the due process clause of the United States Constitution.

- Defendants must not transfer or discharge a current B&G student from B&G under applicable discharge codes, as they are written on the date of the signing of the stipulation, unless the student or parent has been provided with (1) prior notice, (2) an opportunity for a meeting, and (3) approval for the transfer or discharge by DOE personnel outside of B&G.

*See* Stip. of Settlement ¶¶ 7(a)-(c).

Mechanisms to ensure compliance are included. They involve monitoring and an opportunity for plaintiffs to move for contempt or to seek extension of the injunction and monitoring provisions. *See id.* at ¶¶ 32, 36. B&G administrative and support staff will receive immediate training, and then annually during the Agreement Period, so that they can properly administer required practices and procedures. *See id.* at ¶¶ 8, 35.

2. Monitoring

Monitoring by plaintiffs' counsel and an outside monitor comprise the second aspect of the settlement agreement. The procedures entail the following:

- The DOE will provide to plaintiffs' counsel each semester during the Agreement Period: (1) a copy of B&G's line schedule, (2) a summary report of the school's discharges and transfers, (3) redacted copies of planning interview forms that seek approval of a transfer or discharge, and (4) summary attendance reports. Specific deadlines for these reports are set forth by the parties.

- John M. Verre, Co-Director of the Harvard Institute on Critical

14

Issues in Urban Special Education, is appointed the independent monitor. He will review and report on the DOE's compliance with the injunctive relief, producing a draft report to plaintiffs' counsel and defendants' counsel on a semi-annual basis during the Agreement Period.

- Plaintiffs' counsel may request a meeting among the parties following the distribution of each outside monitoring report to discuss possible corrective measures and training to address concerns raised in the report.

*See id.* at ¶¶ 9-11.

John M. Verre, the independent monitor agreed upon by the parties and the court, has extensive experience as a teacher, school administrator, and educational consultant. *See* John M. Verre Vitae, D.E. No. 107, Nov. 21, 2008. He has seventeen years of experience as an educational and organizational consultant, work that has included educational program development and evaluation, monitoring of action plans with respect to racial and linguistic disproportionality in schools, and expert consultation on issues of civil rights and regulatory compliance in educational programming. *Id.*

Mr. Verre has reviewed the relevant documents in the case, including the proposed settlement. *See* Letter to Court from John M. Verre, D.E. No. 107, Nov. 21, 2008. His opinion is that the settlement provisions – including notification of students and parents, procedural protections for students, compensatory educational services, targeted professional development of school staff and administrators, and monitoring – provide a viable approach to address the alleged violations. *Id.* An agreement has been reached for him to perform monitoring services pursuant to the settlement agreement. *Id.* Compensation will be negotiated by the DOE and Mr. Verre. *Id.*

15

### 3. Compensatory Relief

Members of the compensatory education subclass who do not request exclusion from the subclass are eligible under the settlement agreement to receive an array of educational services. Compensatory education services will consist of the following:

- No less than 160 subclass members will have access to a service center for the duration of the Agreement Period. The service center will provide academic support services and guidance services. It will also facilitate communications with class members and counseling sessions to be provided under the agreement.

- Subclass members may, subject to the limitations defined in the settlement agreement, participate in a literacy program at or near B&G.

- Subclass members will, subject to the limitations defined in the settlement agreement, be granted extended public education eligibility that will allow them to continue to work towards a high school diploma.

- Subclass members with disabilities will be entitled to a free appropriate public education while attending a DOE high school pursuant to the settlement agreement.

- Subclass members may, subject to the limitations defined in the settlement agreement, enroll in a GED program, a career training program, a DOE adult education program, or another licensed educational program that serves an individual subclass member's specialized interest or need.

*See id.* at ¶¶ 12-29; *Id.* at Schedule A; Appendix, Settlement Notice.

III.   Class Certification under Rule 23

   A.  Public Interest in Education-Related Class Certifications

Where there is a voluntary proposed settlement, class action certification is more readily granted than where a trial is necessary. The class action serves a particularly useful function where both sides and the public interest concur on a reasonable resolution of an important

16

dispute over municipal educational policies and practice.

For class actions based upon civil rights violations when no economic damages are sought, class certification is especially desirable because the process helps promote voluntary institutional change, *see* Part I.B, *supra.* Any settlement will inevitably affect parties other than those individuals who are expected to benefit directly. The entire New York City public school system will be impacted by the additional students returning to classes or utilizing more educational programs, and by the expenditure of educational funds that could be used for other purposes. *See* Monograph, *Individual Justice in Mass Tort Litigation, supra,* at 92 ("The judge cannot focus narrowly on the facts before the court, declining to take into account the relationship of those facts to the social realities beyond the courthouse door."); Jack Greenberg, *Crusaders in the Courts* 551-64 (2004) (discussing competing interests in the contemporary debate on equalizing educational opportunities). *See also United States v. Yonkers Bd. of Educ.*, 624 F. Supp. 1276 (S.D.N.Y. 1985), *aff'd*, 837 F.2d 1181 (2d Cir. 1987) (engaging in rigorous analysis of community and governmental interests in a lawsuit alleging discriminatory racial segregation in housing and public schools).

### B.  Proposed Class and Subclass Satisfy Rule 23(a) Requirements

Federal Rule of Civil Procedure 23(a) requires that the following provisions be met for class certification: (a) the number of class and subclass members is so numerous that joinder of all members would be impracticable; (b) there are questions of law and fact common to the class and subclass; (c) the claims of representative parties are typical of the claims of the class and subclass they seek to represent; and (d) the representative parties fairly and adequately represent the interests of the class and subclass. Fed. R. Civ. P. 23(a).

### 1. Class and Subclass Are So Numerous that Joinder Is Impracticable

The proposed class and subclass may only be certified if members are sufficiently numerous. Fed. R. Civ. P. 23(a)(1) ("One or more members of a class may sue ... as representative parties on behalf of all members only if ... the class [and subclass are] so numerous that joinder of all members is impracticable."). Impracticability does not mean impossibility of joinder, but difficulty of joinder:

> Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

*Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Precise quantification of class members is not necessary, so long as plaintiffs reasonably estimate the number to be substantial. *See id.* at 935; *McNeil v. New York City Hous. Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989). The Court of Appeals for the Second Circuit has held that a prospective class of forty or more raises a presumption of numerosity. *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *4 (S.D.N.Y. Jan. 12, 2007).

Since 2002, annual B&G student enrollment has ranged from approximately 3,700 to 4,700. *See* First Amended Compl. ¶ 38; B&G Demographics and Accountability Snapshot at 1. Plaintiffs estimate that hundreds of students were placed on modified schedules in which they received less than five and a half hours of daily instruction, were improperly discharged or transferred from B&G, and were otherwise wrongly denied educational services.

18

The 2007 survey was completed by 122 B&G students whose responses indicate that they are members of the class and subclass, having faced class exclusions or other forms of denial of educational services. *See* D'Amore Decl. ¶¶ 15, 17; Morehead Decl. ¶¶ 27-30. In response to the Settlement Notice, sixty people telephoned to identify themselves or their children as class and subclass members and to request reminder notices about the scheduled counseling sessions provided as part of the settlement. *Id.* ¶¶ at 7-8. These callers probably represent only a fraction of class and subclass members.

Numerosity of the class and the subclass is established.

### 2.  Questions of Law and Fact Are Common to Class and Subclass

The court must apply the commonality provision required for certification. Fed. R. Civ. P. 23(a)(2) (There must be "questions of law or fact common to the class [and subclass]"). When "the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional [or illegal] practice or policy that allegedly injured or will injure the proposed class members," the commonality requirement is met. *Daniels v. City of New York*, 198 F.R.D. 409, 417-18 (S.D.N.Y. 2001); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987). Minor factual differences among party members will not defeat certification. *Id.*

Written responses to the 2007 survey and the phone responses to the Settlement Notice demonstrate that substantial numbers of class and subclass members were harmed by defendants' exclusionary policies and practices. Relief for all these students is sought under the same relevant federal and state constitutional and legislative provisions.

Common questions of law and fact have been demonstrated.

### 3.  Claims of the Representative Parties Are Typical of Claims of Class and Subclass

19

The claims of the named plaintiffs must be typical of the claims of the class and compensatory education subclass they seek to represent. Fed. R. Civ. P. 23(a)(3) (Certification requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class [and subclass]."). Party representatives' claims must "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citations and internal quotation omitted). "Minor variations in the fact patterns" of named plaintiffs and putative class members do not prevent a finding of typicality. *Robidoux*, 987 F.2d at 936; *see also Nicholson*, 205 F.R.D. at 99 ("[N]amed plaintiffs can represent class members who suffer different injuries so long as all of the injuries are shown to result from the same practice.").

Named plaintiffs and other class members have faced similar illegal exclusions from educational services to which they are entitled. While these exclusions were effectuated in a variety of ways – including wholesale exclusion from school, placement on shortened class schedules or in the auditorium program, and imposition of partial day exclusions – defendants' general practices and course of conduct and the harms suffered by class and subclass members satisfy the typicality requirement for purposes of class certification.

### 4. Representative Parties Fairly and Adequately Protect the Interests of Class and Subclass Members

Named plaintiffs must be appropriate representatives of the class and subclass for certification to be appropriate. Fed. R. Civ. P. 23(a)(4) (Certification requires that "the representative parties will fairly and adequately protect the interests of the class [and subclass]"). Representatives must have no interests conflicting with the class or subclass. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975). "The question of whether the named plaintiffs can fairly and

20

adequately represent the class is one committed to the sound discretion of the district court."
*Cty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989) (internal quotation omitted).

"Representative plaintiffs must not have interests that are antagonistic to or in conflict with those of the class as a whole;" only a fundamental conflict will defeat the adequacy of representation requirement. *Schwab v. Philip Morris*, 449 F. Supp. 2d 992, 1107 (E.D.N.Y. 2006), *rev'd on other grounds sub nom. McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *see also In re Visa Check/MasterMoney*, 280 F.3d 124, 145 (2d Cir. 2001). The inquiry into adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26.

Representative plaintiffs are only required to know enough about the case to "serve the interests of the class and ensure that they are not simply lending their names to a suit controlled entirely by the attorneys for the benefit of counsel." *Schwab*, 449 F. Supp. 2d at 1108; *In re Zyprexa Product Liability Litigation*, 2008 WL 4097408, at *145-46 (E.D.N.Y. Sept. 5, 2008); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000); *In re Frontier Ins. Group Secs. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997). Other factors that have been considered in determining the adequacy of representation include the named plaintiffs' "knowledge of the case" and "credibility." *In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996).

Plaintiffs have not merely lent their names to the case. By providing plaintiffs' counsel with critical information about their experiences at B&G, they have contributed to counsel's

21

development of the case and pursuit of an appropriate resolution. The named plaintiffs are credible, adequate representatives of the class and subclass.

Pursuant to the parties' request, plaintiff S.L. is removed as a named plaintiff. She retains any rights she may have on behalf of her child, N.L., and N.L. retains any rights she may have as a class member and compensatory education subclass member.

### C. Proposed Class and Subclass Are Appropriate

In addition to satisfying the four Rule 23(a) requirements, plaintiffs must satisfy one of the subsections of Rule 23(b) in order to maintain a class action. Plaintiffs assert that the class is certifiable under Rule 23(b)(2) and that the compensatory education subclass may be maintained under Rule 23(b)(3). For the reasons stated below, the class and subclass may be maintained under those respective Rule 23(b) provisions.

#### 1. Class

As noted above, *see* Part I.B, *supra*, the proposed class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This subdivision is "designed to assist litigants seeking institutional change in the form of injunctive relief." *Nicholson*, 205 F.R.D. at 99. Rule 23(b)(2) is generally satisfied when the nature of the relief sought by plaintiffs is injunctive and would benefit all class members. *See Baby Neal*, 43 F.3d at 58-59 (suggesting that Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief").

There is a strong public interest in maintaining class actions that will benefit a substantial group of individuals whose educational rights have been violated and remain in peril. *See* Part

22

I.B, *supra*. The practices challenged by the class in this litigation may be remedied through injunctive relief that will prevent future violations and that is subject to monitoring.

Because injunctive or declaratory relief is appropriate and desirable, Rule 23(b)(2) is satisfied. The class as agreed upon by the parties should be certified.

### 2. Compensatory Education Subclass

Rule 23(b)(3) applies to the maintenance of the compensatory education subclass. Certification under this provision requires that the court find (a) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (b) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Questions of Law or Fact Common to Class Members Predominate over Questions Affecting Only Individual Members

In the present action, questions of law and fact are common to subclass members. *See* Part III.B.2, *supra*. While B&G students have faced exclusion from educational services and denial of educational opportunities in a variety of ways, the general claims – based upon defendants' general practices and course of conduct and the harms suffered by subclass members – demonstrate that common questions of law and fact predominate. Fed. R. Civ. P. 23(b)(3)(A).

Some students will benefit more than others by this settlement. The very nature of education discrimination is that it will stunt some students almost irreparably and others less so. Uniform remediation is impracticable. Once forced off the educational track, many students will find menial jobs, involvement in crime, or social constraints that make continuation of education difficult to impossible. These differences among class members do not, as in some commercial cases, prevent an appropriate class remedy. *See McLaughlin*, 522 F.3d at 229-34 (holding that

because numerous issues of financial damages "are not susceptible to generalized proof but would require a more individualized inquiry," the predominance requirement of Rule 23(b)(3) was not satisfied); *see also Principles of the Law of Aggregate Litigation* § 3.06 Comment (A.L.I. Council Draft, Nov. 18, 2008) ("The elimination of any mechanical requirement that common issues predominate should help to facilitate settlements, provided that the central indicia of fair and adequate representation are met."); *cf.* John Bronsteen, et al., *Hedonic Adaptation and the Settlement of Civil Lawsuits*, 108 Colum. L. Rev. 1516, 1519 (2008) ("Because other goals – principally, a desire for an outcome perceived as fair – influence a plaintiff's decision whether to settle, that decision is affected in turn by a plaintiff's changing perception over time of the sum that constitutes fair compensation.").

### b. Class Action Is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy

Rule 23(b)(3) requires consideration of whether a class action is superior to alternative methods of adjudication. Factors relevant to the inquiry include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Class certification is often the only available means of providing a non-economic remedy for civil rights violations. None of the subclass members here would be able to individually devote the time, resources, and legal representation necessary to vindicate his or her rights and to secure an appropriate remedy. *See* D'Amore Decl. ¶ 37 (providing empirical support that few

24

persons are able to obtain an appropriate remedy in this kind of case through individual actions).

Compensatory education subclass members who wish to individually control any action against the defendants may opt out. Fed. R. Civ. P. 23(b)(3)(A). Six members of the compensatory education subclass have done so. Supplemental Morehead Decl. ¶ 8. Named plaintiffs and other class members who have been in contact with plaintiffs' counsel provide strong support for the class action. Fed. R. Civ. P. 23(b)(3)(B)-(C).

Certifying the compensatory education subclass provides an efficient, manageable, and rational means of litigating and resolving this matter. Resolution of the class members' claims will inevitably affect individuals and communities other than the named plaintiffs or class members in the case. New York City's school system will be impacted fiscally and logistically by a settlement or judgment of the instant action. The courts provide an effective forum for all competing and aligned interests to be considered in reaching an appropriate resolution. *See* Part III.A, *supra*. Class certification of the subclass as agreed upon by the parties should be granted.

D. Class Counsel

A court certifying a class must ensure adequate class counsel. *See* Fed. R. Civ. P. 23(g). It must consider:

> (i) The work counsel has done in identifying or investigating potential claims in the action;
> (ii) Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) Counsel's knowledge of the applicable law; and
> (iv) The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The court "may consider any other matter pertinent to counsel's ability to fairly and

25

adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The adequacy of counsel requirement is satisfied "where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." *Schwab*, 449 F. Supp. 2d at 1106, *rev'd on other grounds sub nom. McLaughlin*, 522 F.3d 215.

To determine whether plaintiffs' counsel will fairly and adequately represent the interests of the class and subclass, the court has considered counsel's experience, competence, and effort in this litigation. Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii). Plaintiffs' counsel has brought to bear its considerable experience in handling class actions, other complex litigation, and claims of the type asserted in the present action. *See* D'Amore Decl. ¶¶ 3-5; Morehead Decl. ¶¶ 3-6. They have invested extensive time, money, and effort in identifying and investigating potential claims in this class action. Fed. R. Civ. P. 23(g)(1)(A)(i). Significant resources have been and continue to be committed to representing the class and subclass and to achieving a practical remedy for class and subclass members. Counsel will continue its efforts to protect the class through the monitoring provisions of the settlement agreement. Fed. R. Civ. P. 23(g)(1)(A)(iv).

The 2007 survey of putative class members evidences the loyalty, dedication, and expertise of class counsel. The survey allowed class members to share their stories of exclusion from educational programming and to contribute to the fashioning of an appropriate remedy. The creation and operation of a call center for class members to raise questions and concerns or to request reminder notices demonstrate class counsel's sustained commitment throughout the litigation.

Applying the Rule 23(g) factors, the court approves Advocates for Children of New

York, Inc. and the law firm of Morrison & Foerster LLP as class counsel.

IV.    Approval of Proposed Settlement Agreement

A proposed class action settlement must be reviewed by the court to ensure that it is procedurally and substantively fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) ("If the [proposed settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). The court must further confirm that appropriate notice has been provided to class members who would be bound by the settlement. *See* Fed. R. Civ. P. 23(e)(1). Judicial review of a proposed settlement "must be exacting and thorough." Manual for Complex Litigation § 21.61 at 309 (4th ed. 2007). "Even if there are no or few objections or adverse appearances before or at the fairness hearing, the judge must ensure that there is a sufficient record as to the basis and justification for the settlement." *Id.* at 322. Particularly in an action seeking to remedy the unequal treatment of disadvantaged minority students, the court must "determine whether the settlement appears to be the product of serious, good faith negotiations" that aim to provide effective injunctive and compensatory relief. James L. Stengel & Andrew M. Calamari, Complex Litigation 2-42 (1994).

A.    Procedural Fairness

The court has an obligation to ensure that the settlement process has not been corrupted by conflicts of interest and that the class and subclass members have been adequately represented throughout the negotiation of the settlement. *See Weinberger*, 698 F.2d at 74; *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992). Negotiations between the parties must be conducted at arm's length and without collusion. *See In re Painewebber Ltd.*

*Partnerships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997).

Evidence of procedural fairness in the present case comes from the parties' thoughtful communications with class and subclass members throughout the litigation. The parties utilized the 2007 survey data from B&G students to define the class and subclass and to develop beneficial compensatory education services for B&G students whose rights have been violated. *See* Morehead Decl. ¶¶ 27-30. The content of the proposed settlement demonstrates the parties' awareness of the specific harms suffered by B&G students and the relief required to remedy past injuries and prevent future violations. Magistrate Judge Pollak's oversight and mediation of the parties' negotiations further support a finding of procedural integrity through the negotiations process.

The court finds that the proposed settlement agreement was achieved through good faith and arm's length negotiations, and that there are no conflicts of interest.

B. Substantive Fairness, Reasonableness, and Adequacy

The Court of Appeals for the Second Circuit has set out the factors a trial court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate. *City of Detroit v. Grinell Corp.*, 495 F.2d 448 (2d Cir. 1974). They are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement [] in light of the best possible recovery; [and, related to factor (8),] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463.

1. Complexity, Expense, and Likely Duration of Litigation

The factual circumstances with respect to the denial of necessary educational services and opportunities are complex, given the multiple exclusionary practices B&G students have faced and the range of relief required for an appropriate remedy.

The parties have invested considerable resources in the case through data collection, litigation efforts, and settlement negotiations. Absent a settlement, these costs will only escalate. The students now attending B&G face continued risk of harm through the school's exclusionary practices. Many young people no longer attending B&G await compensatory education programs and services that will provide them the educational tools necessary for them to succeed in post-secondary education and the working world. There is an urgent need for these class and subclass members to obtain a prompt remedy – through injunctive relief, monitoring, and compensatory education services -- that protracted litigation would preclude.

The first element of the *Grinnell* test supports approval of the proposed settlement.

2. Reaction of the Class and Subclass

Since publication and distribution of notice to the class, sixty people have contacted counsel to identify themselves or their children as class and subclass members, to request reminder notices about the scheduled counseling sessions to be provided through the settlement, and to ask questions about how to take advantage of the compensatory education services. Supplemental Morehead Decl. ¶ 7. The parties received no written objections to the proposed settlement, and only six individuals have chosen to opt out of the compensatory education subclass. *Id.* at ¶¶ 8-9.

At the fairness hearing of November 14, 2008, one class and subclass member, D.S.,

made an oral statement to the court. Mr. S., a 21-year old named plaintiff in the case, approved

plaintiffs' counsel's representation. He presented his objection to one aspect of the proposed

settlement – that is, the availability of the kind of adequate compensatory education services he

though he needed, and the $12,500 limit to fund individual students' compensatory programs,

*see* Stip. of Settlement, ¶¶ 17(g), 25:

> I just want to say that ... I believe that the Advocates For Children
> has represented me fine and I believe that what is going on so far
> in the case is fair for me to get my GED through the private
> organization, it's just that the cap limit [of $12,500 per student for
> compensatory education services] ... I believe that is unfair to me.
> I'm not trying to be selfish. I'm trying to look out for my future
> and my security.... I think that that is unfair and I feel if I don't
> want to participate in any of the job training programs, that if I
> want to do marketing or business consulting, that I should be able
> to do that with the ... money rather than being locked in and going
> to a private career training program.
>
> I feel that that is unfair and I'm not trying to be selfish once again
> and I'm looking out for my future because four years of my life
> was stolen that I won't be able to get back. I'll never be able to
> have the experience of taking a regional state test. I'll never have
> the experience of coming home with my report card for my father
> to see my straight A's. Now all that is left is for me to get a GED
> and even with the GED, it has its disadvantages. So I will have to
> work harder than other people [who] have a high school diploma.
> So that's why I'm asking that if I want to take something else like
> a marketing class or a business consulting class at a college, that
> [funding beyond] the $12,500 cap should be available for me.

Hr'g Tr. 21-22, Nov. 14, 2008.

Mr. S. comes from a well educated family – both parents went to college. He

demonstrated an ambition to attend college and take advantage of advanced professional studies

in the areas of business, marketing, and entrepreneurship. He and other subclass members

undoubtedly possess the skills and aspirations to achieve a great deal educationally and

30

professionally, given the opportunity.

While the compensatory education services and programs offered under the settlement are remedial and vocational, the settlement does provide adequate broader opportunities for students like Mr. S. *See* Stip. of Settlement ¶¶ 12-29; Appendix at 6. Subclass members with a "specialized interest or need that cannot be accommodated" by the programs listed explicitly in the settlement agreement may secure "payment of the costs associated with enrollment in an accredited or otherwise licensed educational program of the student's choice." *Id.* at ¶ 25. Students like Mr. S. are encouraged to utilize this and other provisions of the settlement to pursue non-vocational educational opportunities suitable to their goals.

With respect to the fee cap of $12,500 for each eligible subclass member, plaintiffs' counsel explained that a range of programs – including those leading to an associate or full college degree – were reviewed in crafting the settlement:

> The tuitions we looked at ranged from $4,000 or $5,000 to $12,000.... We looked at the programs that we had investigated and the tuition that those programs charged to arrive at those numbers and we were optimistic that the $12,500 would actually cover a large number of available programs, [though] not the most expensive certainly.

Hr'g Tr. 24-25, Nov. 14, 2008.

Though the compensatory education services available to subclass members under the settlement may not provide enough funding for students to complete a four-year college program, they do supply adequate benefits to substantially reduce the harms faced by Mr. S. and other subclass members. Mr. S.'s objection was "intelligent and useful but [does not] warrant[] changing [the provisions of] the settlement." Hr'g Tr. 26, Nov. 14, 2008.

The overall "favorable reception of the settlement" from class and subclass members

supports the settlement under the second *Grinell* factor. *Grinell*, 495 F.2d at 462.

### 3. Stage of the Proceedings and the Amount of Discovery Completed

The parties have conducted depositions, extensive document review, interviews of named plaintiffs and class members, and a survey of putative class members. These discovery processes afforded counsel ample information to accurately identify the harms to B&G students, define the class and subclass, and fashion an appropriate and comprehensive remedy. The amount of discovery undertaken has provided plaintiffs' counsel "sufficient information to act intelligently on behalf of the class" in reaching a settlement. *See Schwartz v. Novo Industries A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988).

### 4. Risks of Establishing Liability

At trial, plaintiffs would bear the burden of proving violations under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, the Individuals with Disabilities Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the New York State Constitution, and state education law and regulations. The complexity of the alleged methods and practices of exclusion would require additional substantial documentary evidence and the testimony of parents, students, and educational experts. Establishing causation would present an additional burden for plaintiffs, jeopardizing any relief at all for some of them who may soon lose interest in, or be incapable of, undertaking a formal education. Approval of the settlement that will avoid delays, further harm to current and former students, and additional costs is desirable given these circumstances.

### 5. Risks of Establishing Damages or Right to Other Relief

A further challenge for plaintiffs, absent settlement, would be establishing damages at

32

trial. *See Chatelain*, 805 F. Supp. at 214 ("In class actions, the complexities of calculating damages increase geometrically.") (internal quotations omitted). In special education litigation, experts are regularly required to evaluate an individual student's needs, the deprivation of educational services, and the scope of an appropriate remedy. *See Schaffer v. Weast*, 546 U.S. 49, 60-61 (2005). Compounded is the complexity – and with it, greater risk to plaintiffs – in a class action that aims to address the denial of many hundreds of students' rights to educational programs and services. *Cf. Blackman*, 454 F. Supp.2d 1 (complex education-related class action lawsuit lasting nearly a decade before class members received any relief).

Identifying the individual harms resulting from a denial of educational opportunities and services is difficult. Fashioning an appropriate remedy requires a flexible and multifaceted approach. *Cf. Reid v. District of Columbia*, 401 F.3d 516, 523-24 (D.D.C. 2005) (finding that compensatory education services for children with special learning needs cannot be determined by a "cookie-cutter" approach and instead require a more "flexible approach" that is reasonably calculated to meet students' needs). Given the efforts the parties have exerted to determine a comprehensive and flexible remedy – including distribution and analysis of the putative class member surveys and research of local education service providers – the proposed settlement is in the best interests of class and subclass members.

### 6. Risks of Maintaining the Class Action through Trial

Through the course of litigation, the risk that the class or subclass may be decertified generally weighs in favor of settlement. It ensures that class and subclass members may actually benefit from the remedies to be provided. *See Painewebber*, 171 F.R.D. at 129.

33

### 7. Ability of the Defendants to Withstand a More Onerous Judgment

"The ability of the defendant to pay a judgment greater than the amount offered in a settlement can be relevant to the Court's determination of the Settlement's fairness." *Painewebber*, 171 F.R.D. at 129. Yet a defendant's ability to pay more than provided through the settlement cannot undercut the overall assessment of fairness, reasonableness, and adequacy of a proposed settlement. *Id.* Any increased cost of remediation and other relief to the class in the present case will reduce funds available to other students. This *Grinell* factor favors a settlement which reduces costs of the litigation that would be paid from money that should be applied to other education needs.

### 8. Range of Reasonableness of Settlement in Light of Best Possible Recovery and Attendant Risks of Litigation

The most important factor in the court's assessment of the proposed settlement is the "strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement." *Grinell*, 495 F.2d at 455. The risks to plaintiffs of having to prove liability, establish damages, and maintain the class action through trial must factor into this consideration.

The proposed settlement offers immediate and critical relief to the class, since defendants agree to an injunction preventing them from wrongfully excluding current and future B&G students. *See* Stip. of Settlement, ¶ 7. The settlement will require defendants to inform students of their rights with respect to educational services, and it prohibits the defendants from excluding students from educational services or transferring or discharging them from B&G without following specified protective procedures. *Id.* at ¶¶ 7(a)-(c). Training will be provided to B&G staff to assist it in carrying out the school's obligations under the settlement. *Id.* at ¶ 8. Mechanisms for monitoring – conducted both by plaintiffs' counsel and an independent monitor

34

– form a useful and critical component to ensure that B&G students' rights to educational opportunity are protected.

The subclass will benefit significantly under the provisions of the settlement through an array of compensatory education services to be provided. Plaintiffs' counsel properly declared that they are "very optimistic that the programs we have available will satisfy the demand" of subclass members eligible to receive them. Hr'g Tr. 9, Nov. 14, 2008. The educational services include counseling, literacy programs, guidance and academic support services, career and vocational training, and other educational programs where warranted. Inclusion of these services and programs in the proposed settlement agreement arise in part from the results of the surveys completed by putative class members and compiled by plaintiffs' counsel. *See* Morehead Decl. ¶¶ 29-30. The available services provided to students in the subclass appear to meet students' abilities and aspirations, from learning to read to earning a high school diploma or G.E.D., to succeeding in post-secondary education and a range of vocational and professional careers. *See* Part IV.B.2, *supra.*

The comprehensive and well-crafted settlement, particularly in light of the risks and shortcomings of continued litigation, weighs strongly in favor of approval of the settlement under this final part of the *Grinell* analysis.

C. Notice to Class and Compensatory Education Subclass Members

The method, form, and content of the notice to the compensatory education subclass meet the requirements of Rule 23 and constitutional due process. *See* Order for Notice, D.E. No. 99. Rule 23 outlines the requirements for notice to the class and subclass:

> (A) For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

(B) For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

The detailed twelve-page Settlement Notice was, with the court's approval, sent by mail to approximately 8,900 putative class members. *See* Appendix; Nathan Decl. ¶ 4; Affidavit of Mailing ¶4. A summary notice was published on October 9, 2008, in *The Brooklyn Daily Eagle*, *Our Time Press*, and *The Daily News*. *See* Foley Decl. ¶¶ 5-6.

Contained in the Settlement Notice was a description of the class action and proposed settlement, the definition of the proposed class, an explanation of how subclass members may claim compensatory education services, a description of the services available to subclass members who do not opt out, the deadline for filing objections and for opting out of the subclass, and information about the scheduled settlement hearing. The notice advised class and subclass members of their right to object to the settlement by filing and serving written objections.

Execution of the notice to class and subclass members satisfied all Rule 23 and constitutional due process requirements.

D. Underline{Final Order to Certify the Class and Subclass and to Approve Settlement}

Under the Class Action Fairness Act of 2005, defendants are required to notify appropriate federal and state officials prior to the entering of an order of final approval of a class action settlement. *See* 28 U.S.C. § 1715(b). This statutory requirement entails the following procedures:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of—
>> (1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material);
>> (2) notice of any scheduled judicial hearing in the class action;
>> (3) any proposed or final notification to class members of—
>>> (A) (i) the members' rights to request exclusion from the class action; or
>>>> (ii) if no right to request exclusion exists, a statement that no such right exists; and
>>> (B) a proposed settlement of a class action;
>> (4) any proposed or final class action settlement;
>> (5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;
>> (6) any final judgment or notice of dismissal;
>> (7) (A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or
>>> (B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement; and
>> (8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

*Id.*

37

Final approval of the settlement cannot take place until ninety days after delivery of that notice:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

*See* 28 U.S.C. § 1715(d).

In accordance with the statutory and federal rule requirements, the court now certifies the class and subclass and provisionally approves the proposed settlement. Defendants have been ordered to issue the required notice to state and federal authorities pursuant to 28 U.S.C. § 1715(b) no later than November 18, 2008. Absent a request for a hearing by the United States Attorney General or the State Department of Education, pursuant to the court's order of November 14, 2008, this memorandum and order approving the settlement will become final on February 17, 2009.

V.    Conclusion

This has been a longstanding and complex case, involving the lives of many hundreds of students in New York City's public school system, the welfare of communities where these students live, and the interests of other individuals and neighborhoods indirectly affected. The parties have reached this sensible settlement after long and difficult negotiations.

Class and defense counsel have demonstrated extraordinary dedication to the children in the class and subclass. They and their principals are commended for helping the City of New York take this substantial stride on the road to equal educational opportunities, and to satisfying the United States Constitution as well as federal, state and local law. *See, e.g.*, U.S. Const.

38

amend. XIV, § 1; *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954); No Child Left Behind Act, 20

U.S.C. §§ 6301-7184; N.Y. Const. art. XI, § 1.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: November 25, 2008
Brooklyn, New York

**Appendix – Settlement Notice**

## IF YOU ARE OR WERE A STUDENT AT
## BOYS & GIRLS HIGH SCHOOL AFTER OCTOBER 11, 2002,
## PLEASE READ THIS NOTICE:

## IF YOU ARE OR WERE A STUDENT AT <u>BOYS & GIRLS</u>, AND YOU WERE:

- put on a shortened class schedule (sometimes called an M3 or M5),

- wrongfully turned away from Boys & Girls even though you were registered,

- wrongfully kept out of school for all or part of the school day, and/or

- placed in the Attendance Academic Intervention Program ("AAIP") or the auditorium program,

## YOU MAY BE ABLE TO GET ONE OR MORE OF THESE FREE EDUCATIONAL SERVICES AS PART OF A CLASS ACTION SETTLEMENT:

- Career training and/or GED preparation in both public and private programs if, as of July 1, 2008, you are:

  - 17 years old with fewer than 22 credits,

  - 18 years old with fewer than 33 credits, or

  - 19 years old or older.

  Options for qualified students include career training in welding, automotive repair, plumbing, information technology, office administration, hairdressing and locksmithing.

- The ability to go to high school to work toward a diploma even after you turn 21 years old. If you are out of school now, you can go back to high school as long as you are under 21 on the day you sign up to return to school.

- Tutoring or guidance services at a Service Center operated by the Medgar Evers College School of Professional and Community Development and located at Boys & Girls.

- Help with reading skills in a literacy program at Boys & Girls during or after school hours.

To receive a placement in a career training or GED program, you must meet with a counselor to talk about your options and find a program that is right for you. You may meet with a counselor at:

**[insert location in all caps or otherwise easily readable]**

**during any of the following times:**

**December 1-4 and December 8-11, 2008, 3:00 p.m. – 8:00 p.m.**

**January 5-8, 2009, 3:00 p.m. – 8:00 p.m.**

**February 9-12, 2009, 3:00 p.m. – 8:00 p.m.**

If none of these times work for you, call [insert #] to schedule an appointment.

If you want tutoring, help with reading, or guidance services you may go to one of the sessions above or you may visit the Service Center located at Boys & Girls when it opens.

If you want to continue to attend school past the age of 21, you must go to a counseling session on one of the days listed above OR visit the Service Center no later than the end of the school year during which you turn 21 or the end of the fall semester of the 2009/2010 school year, whichever comes first.

These educational services are being made available as part of the settlement of a class action lawsuit. That settlement may affect your rights. Please read the following notice carefully for complete information about the settlement of the lawsuit. If you have any questions, call Advocates for Children at [insert number]. If you do not want to participate in the settlement, you must choose that option on the enclosed form and return it no later that November 21, 2008.

Even if you were NOT subject to any of the above practices, please see the section at the end of this notice "For All Students At Boys & Girls."

If you are younger than 21 years old and want to re-enroll in a public high school, you may go to a Borough Enrollment Center anytime to sign up to return to school. Contact 311 for the location and hours of the Borough Enrollment Center near you.

**If You Are or Were a Student at <u>Boys & Girls</u> after October 11, 2002, and You Were Put on a Shortened Class Schedule (Sometimes Called an M3 or M5), Wrongfully Turned Away From Boys & Girls Even Though You Were Registered, Wrongfully Kept Out Of School for All or Part of the School Day, and/or Put in the Attendance Academic Intervention Program ("AAIP") or the Auditorium Program, You May Be Able to Get Free Educational Services as part of a Class Action Settlement.**

If one or more of these things happened to you, and you have not earned a High School diploma by June 30, 2008, you will be entitled to additional educational services under this settlement, if it is approved.

## YOUR LEGAL RIGHTS MAY BE AFFECTED BY THIS CASE WHETHER OR NOT YOU ACT. READ THIS NOTICE CAREFULLY.

The proposed settlement resolves a lawsuit over whether the Department of Education ("DOE") wrongfully put students at Boys & Girls on shortened class schedules, wrongfully turned students away even though they were on the register, wrongfully subjected students to partial day exclusion, and/or placed students in the AAIP.

For students who were subject to these practices, this proposed settlement provides for:

(1)     placement in a DOE or Non-DOE Career Training Program, GED Program, or Adult Education Program, at the DOE's expense,

(2)     the ability to attend a DOE High School past the age of 21,

(3)     access to academic support services and guidance services provided by a service center located at Boys & Girls, and/or

(4)     access to literacy program services provided at Boys & Girls.

To get many of the services described above, the student must attend a counseling session. Not all students are eligible for all of these additional educational services. The full procedures for deciding which educational services you may receive under the terms of this proposed settlement are explained in the Stipulation of Settlement (the *"Agreement"* or *"Settlement"*).

If you are or were a student at Boys & Girls, but you were NOT subject to any of the above practices, please see the section at the end of this notice "For All Students At Boys & Girls."

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **ASK FOR ADDITIONAL EDUCATIONAL SERVICES** | Meet with a Counselor from the Service Center to identify a program that meets your needs. Counseling sessions will be held at [insert location] between 3:00 p.m. and 8:00 p.m. on December 1-4, 2008; December 8-11, 2008; January 5-8, 2009; and February 9-12, 2009. You must go to a counseling session to be eligible for a placement in a career training or GED program under this settlement. |
| | To get tutoring, guidance, or help with reading, you may attend a counseling session or visit the Service Center located at Boys & Girls at any time. |
| | If you want to stay in school past the age of 21, you must attend a counseling session OR visit the Service Center before the end of the school year during which you turn 21 or the end of the fall semester of the 2009/2010 school year, whichever comes first. |
| **CHOOSE NOT TO PARTICIPATE** | You may exclude yourself from the compensatory educational services portion of this settlement by filling out and returning the enclosed form. If you opt out, you will be free to bring any individual claims for compensation for wrongful acts by DOE at Boys & Girls alleged in this lawsuit. If you choose to opt out, you must return the opt-out form by November 21, 2008. |
| **OBJECT** | Write to the Court about why you don't like the proposed Settlement or why you don't think the proposed Class or Subclass should be certified. |
| **GO TO A HEARING** | Ask to speak in Court concerning certification of the proposed Class or Subclass and/or the fairness of the proposed Settlement. |

- **If you do nothing,** you will not be able to receive free educational services and will also give up your right to bring individual claims concerning Boys & Girls' alleged wrongful exclusions between October 11, 2002 and June 30, 2008.

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this case still has to decide whether to certify the proposed Class and Subclass and whether to approve the proposed Agreement. The educational services described above will be available if the Court certifies the Class and Subclass and approves the proposed Agreement after the procedures detailed in this notice are followed.

## BASIC INFORMATION

1.    **What is this lawsuit about?**

This federal lawsuit was brought by students of Boys & Girls who alleged that they were illegally excluded from the educational program at Boys & Girls. Named Plaintiffs filed the Complaint on October 11, 2005, alleging that the DOE and the Board of Education (together, the *"Defendants"*) violated the due process clause of the 14th Amendment of the U.S. Constitution, 42 U.S.C. § 1983, the New York Constitution, the New York Education Law and the regulations promulgated thereunder when they placed the Named Plaintiffs on shortened and/or inadequate class schedules, placed them in the AAIP, and/or wrongfully transferred or discharged them from Boys & Girls. Defendants have denied any liability, wrongdoing or violation of law concerning these allegations and asserted affirmative defenses.

2. **What is a class action?**

3. The Named Plaintiffs made their claims through a class action complaint on behalf of themselves and also on behalf of other students at Boys & Girls who may have been affected by these practices. In a class action, one or more people called "*Class Representatives*", who include the Named Plaintiffs here, act on behalf of people who have similar claims. The Class Representatives and all people who have similar claims are the "*Class Members*" or the "*Class*." One court resolves the issues for all Class Members except for any Class Members who properly exclude themselves from the Class. U.S. District Judge Jack Weinstein is presiding over this class action. After the Settlement Fairness Hearing scheduled for November 14, 2008 at 10 a.m. (see Question 15), Judge Weinstein will decide whether to certify the Class and Subclass proposed in the Settlement.**Why did I get this notice?**

You received this notice because you were on the register at Boys & Girls some time between October 11, 2002 and June 30, 2008, and you have not received a high school diploma from the DOE. While you were there you may have been subjected to one of the practices that were challenged by this case. If that happened to you, you might be a member of the proposed "Compensatory Education Subclass," also called the "Subclass."

# WHO IS IN THE PROPOSED SETTLEMENT?

To see if you may be affected by this settlement or if you can receive educational services from it, you first have to determine if you are a Member of the Proposed Subclass.

4. **How do I know if I am part of the proposed settlement?**

The parties are requesting that Judge Weinstein certify a Class and a Subclass and approve the proposed settlement set forth in the Agreement under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Everyone who fits the following description is a member of the proposed Compensatory Education Subclass:

*Everyone who has not earned a High School Diploma on or before June 30, 2008 and who, at any time between October 11, 2002 and June 30, 2008, and while on the school register at Boys & Girls, was (1) denied a program with at least five and one-half hours of instruction designed to lead towards Graduation, unless fewer hours of instruction were necessary for Graduation, (2) wrongfully turned away from Boys & Girls, (3) wrongfully subjected to partial day exclusion, and/or (4) placed in the AAIP.*

If you are a Boys & Girls student, but were not subject to one or more of the practices described above, you are not part of the proposed Compensatory Education Subclass, but you will receive the benefit of a court order requiring the DOE to comply with the law so that these practices do not happen. Please see question number 11 below for more information.

5. **I'm still not sure if I am included.**

If you are still not sure whether you are included, you can ask for further clarification. You can call [insert number] or visit www.advocatesforchildren.org for more information.

6. **Why is there a proposed settlement?**

The Court did not decide in favor of Named Plaintiffs or Defendants. At this time, the Court has not certified the proposed Class or Subclass. Instead, both sides agreed to a proposed settlement that they believe is fair, adequate, and reasonable. That way, they avoid the cost of a trial, and the people affected will receive benefits sooner. The Class Representatives and their attorneys think the proposed settlement is in the best interests of all Class Members.

# THE PROPOSED SETTLEMENT – WHAT YOU MAY RECEIVE IF YOU ARE A SUBCLASS MEMBER

**7.    What does the proposed settlement provide for the Subclass Members?**

In exchange for the release of the Subclass Members' claims, the Defendants have agreed to the terms of a proposed settlement. The additional educational services described in this section are only available to you IF you are a Subclass Member. Here is a brief summary of the additional educational services that are available to Subclass members as part of the settlement:

## Career or Vocational Training

You may be eligible for placement in a Non-DOE or DOE GED or Career Training Program or a DOE Adult Education Program if, as of July 1, 2008, you have a GED or are 17 years old with fewer than 22 credits, 18 years old with fewer than 33 credits, or 19 years old or older. The types of placements available include programs in welding, automotive repair, plumbing, information technology and administration, hairdressing, and cosmetology, as well as many other options. You may also use the counseling and academic services offered by the service center at Boys & Girls.

## Additional Time In High School

If you are currently in school, either at Boys & Girls or another DOE High School, and you expect to turn 21 before you get a High School Diploma, you will have the right to continue to attend a DOE High School past the school year during which you turn 21. If you are out of school you may reenroll as long as you are under 21 when you sign up for school and may continue to attend a DOE High School past the age of 21. You may stay in school until you obtain your diploma as long as you are making satisfactory progress.

## Service Center

For students who are members of the Compensatory Education Subclass described above, the DOE will establish a Service Center at Boys & Girls which will be operated by the Medgar Evers College School of Professional and Community Development to provide academic support and guidance services for the Compensatory Education Subclass Members. The Service Center will open during the fall semester of the 2008/2009 school year and operate until the end of the fall semester of the 2010/2011 school year. Services will be available both during and after regular school hours. These services are available to you even if you are attending a school or program other than Boys & Girls.

## Literacy Program

The DOE will provide a literacy program at Boys & Girls using the Scholastic Read 180 Reading Intervention Program. The literacy program will begin during the spring semester of the 2008/2009 school year and will be offered until the end of the fall semester of the 2010/2011 school year. This literacy program will be provided both during and after regular school hours. If you are a Compensatory Education Subclass Member, the literacy program is available to you even if you are attending a school or program other than Boys & Girls.

**8.    What do I need to do to get these educational services?**

If you want to use the Service Center or the Literacy Program, you just need to go to the Service Center. If you would like to continue to attend a DOE High School past the age of 21, you **must** attend a

counseling session OR speak with a counselor at the Service Center about this no later than the end of the school year during which you turn 21 or the end of the fall semester of the 2009/2010 school year, whichever comes first.

**To be placed in a Non-DOE or DOE GED or Career Training Program, you must meet with a counselor. These counseling sessions will be held between 3:00 p.m. and 8:00 p.m. on December 1-4, 2008, December 8-11, 2008, January 5-8, 2009, and February 9-12, 2009 at _____.**
You do not need to make an appointment to attend a counseling session during these dates and times; just go. If you cannot attend a counseling session during any of these times, you can call [insert #] to schedule a session at another time.

## YOU MUST MEET WITH A COUNSELOR NO LATER THAN FEBRUARY 28, 2009, TO RECEIVE A PLACEMENT IN A DOE OR NON-DOE CAREER TRAINING OR GED PROGRAM

If you would like to receive a reminder of the dates and times of the counseling sessions, you may fill out and return the enclosed form. Indicate on the form that you want to participate in the settlement and would like a reminder of the counseling session. As long as you send in the form by October 31, 2008, you will receive a reminder. You DO NOT have to return the form in order to attend a counseling session or receive academic support and literacy services at the Service Center; return the form only if you want to be reminded of the dates and times of the counseling sessions.

At the counseling session, you and the counselor will discuss the types of programs and services that are available to you. The counselor will recommend programs and services based on your transcript as well as your interests, abilities and preferences. You will be offered a placement in the program of your choice, as long as you meet the eligibility criteria and there are seats available in the program. You will be notified of your placement in a program either at your counseling session or within a week after your round of counseling sessions is complete.

A list of the programs expected to be available is in Schedule A of the Stipulation. If the DOE concludes that a program listed in Schedule A does not meet certain criteria, DOE and Plaintiffs' Counsel will have identified alternate programs by the time the guidance sessions begin.

If you have a specialized interest or need that cannot be accommodated by a program on Schedule A, you may apply for payment of the costs associated with enrollment in an accredited or otherwise licensed educational program of your choice. The project coordinator of the Service Center, in consultation with the counselors, will decide on your application. However, funds for programs other than those on Schedule A are limited, and even if your application is granted you may not be approved for payment of the entire cost of your program.

To receive any of these educational services, you will be required to sign a statement under penalty of perjury that you were subject to one or more of the practices at Boys & Girls complained of in this lawsuit: placing students on shortened schedules, wrongfully turning away Boys & Girls students despite their being on the register, wrongfully excluding students from school for part of the school day, and placing students in the AAIP. If, based on the information in your statement, DOE believes that you are not eligible to receive these educational services it will notify Plaintiffs' counsel and, if necessary, the matter will be brought to the Court's attention for resolution.

## The Named Plaintiffs

The Named Plaintiffs have agreed to and approved the Settlement, and are eligible for the same benefits as you. Because they have been involved with the litigation and in the decision-making process and because their educational requirements are already known to the Defendants, the Named Plaintiffs will not need to attend the counseling sessions described above, and their placements will be negotiated

directly with counsel for the Defendants. If the Settlement is approved, the Named Plaintiffs will be eligible for the same kinds of placements and services described above.

9.   **When would I have access to the educational services offered under the Settlement?**

The Court will hold a hearing on November 14, 2008, at 10:00 a.m. (see Question 15) to decide whether to certify the proposed Class and Subclass and whether to approve the proposed Settlement ("*Settlement Fairness Hearing*"). If Judge Weinstein certifies the proposed Class and Subclass and approves the proposed Settlement after the Settlement Fairness Hearing, there could still be appeals. If any appeal is filed it is uncertain how long it might take to resolve. If the proposed settlement is approved, the Service Center will open at Boys & Girls during the fall semester of the 2008/2009 school year, and the literacy program will begin during the spring semester of the 2008/2009 school year. The counseling sessions that you must attend in order to be placed in a Career Training Program, GED Program, or Adult Education Program will be held in December 2008, January 2009, and February 2009. If you are placed in one of these programs, the start date will vary depending on the individual program.

If you are under 21 and you are not currently in school and would like to re-enroll in a DOE High School, you may do so at any time. You do not need to wait until after the Settlement is approved. To re-enroll in school, you may go to a Borough Enrollment Center. Contact 311 for the location and hours of the Borough Enrollment Center near you.

10.   **What am I giving up to get these services?**

If you do not choose to be excluded from the subclass, the Subclass is certified, and the proposed settlement is approved at the Fairness Hearing, you cannot sue, continue to sue, or be part of any other lawsuit against the DOE about the practices at Boys & Girls that are the subject of this lawsuit: placing students on shortened schedules, wrongfully turning away Boys & Girls students despite their being on the register, wrongfully excluding students from school for part of the school day, and placing students in the AAIP. It also means that all of the Court's orders will apply to you and legally bind you.

If the Class is certified and the Court approves the Settlement, all Class Members, even those who choose to opt out of the Subclass, will be bound by the terms of the proposed settlement concerning Boys & Girls' future compliance with DOE policy and state and federal law.

The release contained in the proposed settlement states:

"Settled Claims" means any and all claims (i) that have been asserted in the Action by the Named Plaintiffs, Class Members, or any of them against any of the Released Parties, or (ii) that could have been asserted in any forum by the Named Plaintiffs, Class Members, or any of them against any of the Released Parties which arise out of, relate to, or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint, except that "Settled Claims" does not include (a) claims to enforce the Settlement or any provision thereof; (b) claims for injunctive relief that are raised in *E.B. v. New York City Board of Education*, 02 Civ. 5118 (E.D.N.Y.), *J.G. v. Mills*, 04 Civ. 5415 (E.D.N.Y.), or *Jose P. v. Ambach*, 96 Civ. 1834 (E.D.N.Y.); (c) claims pursuant to the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, or N.Y. Educ. Law § 4404, to the extent that those claims do not arise out of nor are based upon the allegations, facts, occurrences, representations or omissions that establish the individual as a Compensatory Education Subclass Member; or (d) claims for individual compensatory relief relating to events that occur after July 1, 2008 brought by Current B&G Students.

11.   **What if I do not want to participate in the settlement?**

You may choose to be excluded from the Compensatory Education Subclass by filling out the enclosed form, indicating that you want to "opt-out" or be excluded from the settlement, and returning it to [insert

address] no later than November 21, 2008. If you have received your GED prior to attending a counseling session and you want to enroll in a non-DOE career training program but there are no seats available when you attend your counseling session, you may also ask to be excluded from the Compensatory Education Subclass by filling out a form that you will receive at the session. If you ask to be excluded, you will have no rights to the additional educational services provided for in the Settlement. You will, however, keep your right to sue the DOE for individual relief arising from any of the practices at Boys & Girls complained of in this lawsuit.

# FOR ALL STUDENTS AT BOYS & GIRLS

12.    **What does the settlement provide for students at Boys & Girls who are at risk of being put on modified schedules or otherwise denied a full instructional program?**

In addition to the benefits provided to members of the Subclass, if the Court certifies the proposed Class and Subclass, everyone in the Subclass, plus all students at Boys & Girls through the fall semester of the 2010/2011 school year, will be in a "Class" protected by this Settlement.

## Who is in the Proposed Class

You are in the proposed Class if you are currently on the register at Boys & Girls or will be on the register at Boys & Girls at any time before the end of the fall semester of the 2010/2011 school year OR you were enrolled at Boys & Girls any time between October 11, 2002 and June 30, 2008, and you were or are at risk of being (1) denied a program with at least five and one-half hours of instruction designed to lead towards Graduation, unless fewer hours of instruction were necessary for Graduation, (2) wrongfully turned away from Boys & Girls, (3) wrongfully subjected to partial day exclusion, and/or (4) placed in the AAIP. You are NOT a member of the proposed Class if you received a High School Diploma before June 30, 2008.

Even if you decide to be excluded from the Subclass, you are still a member of the Class if you are or were at Boys &Girls and the Court certifies the Class. You cannot opt out of the Class if the Class is certified and the Settlement is approved, but you can object to certification and/or the Settlement if you don't like any part of it by taking the steps explained in questions 15 and/or 18.

## Benefits to the Class

As part of the Settlement, the DOE has agreed to provide all current Boys & Girls students with program cards that tell them they have the right to attend school full time until they receive a regular high school diploma or until the end of the school year in which they turn 21 and to have a program with at least five and one half hours of instruction designed to lead toward graduation, unless fewer hours of instruction are necessary for graduation.

The DOE has also agreed not to exclude, transfer, or discharge current Boys & Girls students from school without following state and federal law as well as the DOE's policies and procedures. The DOE will also train the Boys & Girls administration and student support staff about the DOE's obligations under the Settlement. In addition, an Outside Monitor will review and report on DOE's compliance with the requirements of the Settlement.

These agreements and the monitoring will be in place through the fall semester of the 2010/2011 school year, unless extended as described in the Agreement. If, after receiving this notice, and during the period of the Agreement, you believe that you have been excluded from Boys & Girls or transferred or discharged from Boys & Girls in violation of the Agreement, you may, after exhausting available administrative remedies if any, seek appropriate injunctive relief in the United States District Court for the Eastern District of New York. For information on how to seek such relief and provide the required notice to Defendants, see Paragraph 31 of the Agreement.

# LAWYERS REPRESENTING YOU

13.    **Do I have a lawyer in this case?**

Attorneys from Advocates for Children of New York and the law firm of Morrison & Foerster LLP have asked the Court to appoint them to represent you for the purposes of this Settlement, *if you are a Class Member.* Lawyers appointed by the Court to represent a class are called Class Counsel. You will not be charged for being represented by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

14.    **How will the lawyers be paid?**

The Agreement provides that the DOE will pay Class Counsel's reasonable attorneys' fees for investigating the facts, litigating the case, and negotiating the proposed settlement. ***The payment of these fees will not affect the recovery of additional educational services by Class Members in any way.***

# OBJECTING TO THE PROPOSED SETTLEMENT

You can tell the Court that you don't agree with certification of the Class or Subclass or with the proposed settlement or some part of it.

15.    **How do I tell the Court that I don't agree with class certification and/or don't like the proposed settlement?**

If you are a member of the proposed Class or Subclass, you can object to class certification and to the proposed settlement. You can give reasons why you think the Court should not certify the Class or Subclass or approve the Settlement. The Court may consider your views. To object, you must send a letter saying that you object to *D.S. et al. v. New York City Dept. of Educ., et al.,* United States District Court, Eastern District of New York, No. 05 Civ. 4787 (JBW)(CLP). Be sure to include your name, address, telephone number, your signature, and the reasons you object to the proposed settlement. **Mail the objection to the following addresses postmarked no later than November 3, 2008:**

<table>
<tr>
<td>

**The Clerk of the Court**
**United States District Court**
**Eastern District of New York**
**225 Cadman Plaza East**
**Brooklyn, New York 11201**

</td>
<td>

**Shawn V. Morehead, Esq.**
**Advocates for Children of New York, Inc.**
**151 West 30th Street**
**New York, New York 10001**

**Eamonn Foley, Esq.**
**New York City Law Department**
**Office of the Corporation Counsel**
**100 Church St., Room 2-197**
**New York, NY 10007-2601**

</td>
</tr>
</table>

# THE COURT'S SETTLEMENT FAIRNESS HEARING

The Court will hold a hearing to decide whether to certify the proposed Class and Subclass and whether to approve the proposed settlement. You may attend and you may ask to speak, but you don't have to.

16. **When and where will the Court decide whether to certify the Class and Subclass and whether to approve the proposed settlement?**

The Court will hold a Settlement Fairness Hearing on November 14, 2008, at 10:00 a.m. at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, in Courtroom 10B. At this hearing, the Court will consider whether to certify the Class and Subclass and whether the proposed settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jack Weinstein will listen to people who have properly asked to speak at the hearing. After the hearing, the Court will decide whether to approve the proposed settlement.

17. **Do I have to come to the hearing?**

No. Advocates for Children and Morrison & Foerster, LLP, will answer questions Judge Weinstein may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to court to talk about it. As long as you mailed your written objection on time, the Court may consider it. You may also pay your own lawyer to attend, but it is not necessary.

18. **May I speak at the hearing?**

You may ask the Court for permission to speak at the Settlement Fairness Hearing. To do so, you must send a letter saying that it is your intention to appear in *D.S. et al. v. New York City Dept. of Educ., et al.*, No. 05 Civ. 4787 (JBW)(CLP). Be sure to include your name, address, telephone number, your signature and any witnesses you may call to testify and exhibits you intend to introduce into evidence at the hearing. **Your letter must be postmarked no later than November 3, 2008**, and be sent to the following addresses:

<div style="display:flex">

**The Clerk of the Court**
**United States District Court**
**Eastern District of New York**
**225 Cadman Plaza East**
**Brooklyn, New York 11201**

**Shawn V. Morehead, Esq.**
**Advocates for Children of New York, Inc.**
**151 West 30th Street**
**New York, New York 10001**

**Eamonn Foley, Esq.**
**New York City Law Department**
**Office of the Corporation Counsel**
**100 Church St., Room 2-197**
**New York, NY 10007-2601**

</div>

19. **What if I do nothing at all?**

If you are eligible for free educational services because you are a Compensatory Education Subclass Member, but do not attend a counseling session or go to the Service Center as described above, you will NOT be able to receive these services. In addition, if the Subclass is certified and the Settlement is approved, you will have given up any right you may have had to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the DOE challenging the practices alleged in this lawsuit.

If you are or will be at Boys & Girls, but you have not been subjected to the practices described by this lawsuit, you do not need to do anything to receive the protections of this Settlement. You only need to take action if you were subjected to these practices at Boys & Girls in the past.

# GETTING MORE INFORMATION

20. **Are there more details about the proposed settlement?**

This notice summarizes the proposed settlement. More details are in the Agreement itself. To the extent that this notice varies from the Agreement, the terms of the Agreement are controlling. You can access a copy of the Agreement by visiting the Advocates for Children website at www.advocatesforchildren.org. You can call [insert number] or visit www.advocatesforchildren.org for more information.